MORRIS LAW GROUP
Steve Morris, Bar No. 1543
Rosa Solis-Rainey, Bar No. 7921
411 E. Bonneville Ave., Ste. 360
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile:  (702) 474-9422
Email:  sm@morrislawgroup.com
Email:  rsr@morrislawgroup.com

Attorneys for Defendant, McKesson Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CITY OF RENO,<br><br>Plaintiff,<br><br>PURDUE PHARMA, L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY, INC. d/b/a THE PURDUE FREDERICK COMPANY, INC.; PURDUE PHARMACEUTICALS, L.P.; TEVA PHARMACEUTICALS USA, INC.; MCKESSON CORPORATION; AMERISOURCE BERGEN DRUG CORPORATION; CARDINAL HEALTH, INC.; CARDINAL HEALTH 6 INC.; CARDINAL HEALTH TECHNOLOGIES LLC; CARDINAL HEALTH 108 LLC D/B/A METRO MEDICAL SUPPLY; ABBVIE, INC.; ABBVIE US, LLC; DEPOMED, INC.; DAIICHI SANKYO, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC F/K/A ACTAVIS PLC; ACTAVIS, INC. | Case No.  3:18-cv-00454-MMD-WGC<br><br>MCKESSON CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND |

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

f/k/a WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; INSYS THERAPEUTICS, INC.; MALLINCKRODT LLC; MALLINCKRODT BRAND PHARMACEUTICALS INC.; MALLINCKRODT US HOLDINGS, INC., ACTAVIS LLC; ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.; ROBERT GENE RAND, M.D. AND RAND FAMILY CARE, LLC.; DOES 1 through 100; ROE CORPORATIONS 1 through 100 and ZOE PHARMACIES 1 through 100, inclusive,

Defendants.

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................ ii

I.      INTRODUCTION ............................................................................. 1

II.     BACKGROUND.................................................................................. 2

        A.      Plaintiff's Action................................................................... 2

        B.      The Multidistrict Litigation ................................................ 4

III.    ARGUMENT ...................................................................................... 5

        A.      The Complaint Necessarily Raises Disputed and Substantial Issues of Federal Law. ........................................................................... 5

                1.      The Complaint "necessarily raises" a federal issue. ...................... 6

                2.      The parties "actually dispute" the federal issue. ............................ 10

                3.      The federal issues are "substantial." ................................................ 12

                        a.      There is a federal interest in ensuring uniform interpretation of the CSA ............................................................... 13

                        b.      The federal issues presented in this case have broad significance for the federal government. ......................... 14

                        c.      This case presents a nearly pure issue of law that would have applications to other federal cases. ............................... 15

                        d.      Substantiality does not require a federal cause of action...... 15

                4.      Federal jurisdiction will not disrupt the Congressionally-approved balance of federal-state judicial responsibilities. ............. 16

        B.      The Remand Decisions Cited by Plaintiff Are Distinguishable.................. 16

        C.      The Court Should Defer, Rather Than Expedite, Consideration of Plaintiff's Remand Motion.......................................................... 18

IV.     CONCLUSION.................................................................................... 20

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

i

1

## TABLE OF AUTHORITIES

2   Cases                                                                    Page(s)

3   *Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*,
4       29 F. Supp. 3d 808, 862 (E.D. La. 2014) ........................................................... 11

5   *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*,
        850 F.3d 714 (5th Cir. 2017) ............................................................... 10, 13, 16
6
    *Broder v. Cablevision Sys. Corp.*,
7       418 F.3d 187 (2d Cir. 2005) ..................................................................... *passim*

8   *Cabazon Band of Mission Indians v. Wilson*,
9       124 F.3d 1050 (9th Cir. 1997) ..................................................................... 16

10  *Caterpillar, Inc. v. Williams*,
        482 U.S. 386 (1987) ................................................................................... 3, 8
11
    *City of Chicago v. Int'l Coll. of Surgeons*,
12      522 U.S. 156 (1997) ................................................................................ 5, 10

13  *City of Jacksonville v. Purdue Pharma L.P.*,
14      No. 3:18-cv-00751 (M.D. Fla. Aug. 22, 2018), ECF No. 43 ......................... 20

15  *City of Paterson v. Purdue Pharma L.P.*,
16      No. 2:17-cv-13433 (D.N.J.) ......................................................................... 20

17  *City of Reno v. Purdue Pharma L.P., et al.*,
        No. 3:18-CV-00454 (D. Nev.) ........................................................................ 2
18
    *County of Anderson v. Rite Aid*,
19      No. 8:18-cv-1947 (D.S.C. Aug. 21, 2018) ................................................... 18

20  *County of San Mateo v. McKesson Corp.*,
21      No. 3:18-cv-04535 (N.D. Cal. Aug. 28, 2018), ECF No. 22 ......................... 20

22  *Cty. of Hudson v. Purdue Pharma L.P*,
        No. 2:18-cv-09029 (D.N.J.) ......................................................................... 20
23
    *Delaware, ex rel. Denn v. Purdue Pharma L.P.*,
24      No. 1:18-cv-00383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018) ............ 18

25  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
26      545 U.S. 546 (2005) ....................................................................................... 5

27

28

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California,*
   463 U.S. 1 (1983) ................................................................................................18

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,*
   545 U.S. 308 (2005) ....................................................................................... *passim*

*Gunn v. Minton,*
   568 U.S. 251 (2013) ....................................................................................... *passim*

*Hernandez v. ASNI, Inc.,*
   2015 WL 3932415 (D. Nev. June 24, 2015) ..................................................19

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.,*
   824 F.3d 308 (2d Cir. 2016) .............................................................. 6, 7, 14

*Masters Pharm., Inc. v. DEA,*
   861 F.3d 206 (D.C. Cir. 2017) .....................................................................3, 7

*McKay v. City & Cty. of San Francisco,*
   2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) ...............................................11

*Merrell Dow Pharms. v. Thompson,*
   478 U.S. 804 (1986) ...................................................................................7, 16

*West Virginia, ex rel. Morrisey v. McKesson Corp.,*
   No. 16-cv-01772, 2017 WL 357307 (S.D. W. Va. Jan. 24, 2017) ...............17

*West Virginia, ex rel. Morrisey v. McKesson Corp.,*
   No. 2:17-cv-03555-DAF (S.D. W. Va. Feb. 15, 2018) ..................................17

*N. Miss. Med. Ctr., Inc. v. McKesson Corp.,*
   No. 1:18-cv-00078 (N.D. Miss.)....................................................................20

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC,*
   770 F.3d 1010 (2d Cir. 2014)......................................................................... *passim*

*In re: Nat'l Prescription Opiate Litig.,*
   No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161 (attached as
   Exhibit B)........................................................................................................15

*In re National Prescription Opiate Litig.,*
   MDL No. 2804 (J.P.M.L.).................................................................................2

*New Hampshire v. Purdue Pharma, et al.,*
   No. 17-cv-427-PB, 2018 WL 333824 (D.N.H. Jan. 9, 2018) .......................18

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

iii

*Pate v. DePuy Orthopaedics, Inc.,*
  2012 WL 3532780 (D. Nev. Aug. 14, 2012)..........................................................19

*PNC Bank, N.A. v. PPL Elec. Util. Corp.,*
  189 F. App'x 101 (3d Cir. 2006) .................................................................6, 7

*Ranck v. Mt. Hood Cable Regulatory Comm'n,*
  2017 WL 1752954 (D. Or. May 2, 2017) ..............................................................6

*Tucson Medical Center v. Purdue Pharma L.P.,*
  No. 4:18-cv-00481 (D. Ariz. Oct. 5, 2018), ECF No. 50 ...............................20

" *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.,*
  27 F.3d 911 (3d Cir. 1994) .........................................................................7

*Village of Melrose Park v. McKesson Corp.,*
  No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018), ECF No. 26 ..........................20

*Weber County, Utah v. Purdue Pharma,*
  No. 1:18-cv-00089 (D. Utah Aug. 7, 2018) ......................................................18

**Statutes**

21 U.S.C. § 801, *et seq.*.........................................................................................1

21 U.S.C. § 882(a) ...............................................................................................17

21 U.S.C. § 903 .....................................................................................................15

28 U.S.C. § 1331 ................................................................................................1, 5

28 U.S.C. § 1331(a) ...............................................................................................7

28 U.S.C. § 1441(a) ...............................................................................................5

**Other Authorities**

21 C.F.R. § 1301.74(b)....................................................................................3, 7, 8

21 C.F.R. § 1303.11(a)...........................................................................................10

H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566   14

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

I.    INTRODUCTION

McKesson Corporation removed this case because the City of Reno ("Plaintiff") asserts claims that McKesson and other wholesale distributors of prescription opioids (collectively, "Distributors") breached legal duties arising under the federal Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (the "CSA"). Plaintiff moves to remand this case to state court for lack of subject matter jurisdiction even though its claims against Distributors are predicated on alleged violations of those federal duties. Plaintiff's reliance on duties arising under federal law creates federal question jurisdiction under 28 U.S.C. § 1331.

This Court need not and should not reach the merits of Plaintiff's remand motion. Instead, for the reasons stated in McKesson's Motion to Stay (filed contemporaneously herewith), this Court should defer consideration of Plaintiff's remand motion and allow the issue presented in that motion to be decided on a national basis, alongside almost identical claims brought by other plaintiffs across the country as part of the national opioid litigation that has been consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") for pre-trial purposes in the United States District Court for the Northern District of Ohio (the "MDL").

Were this Court to reach the merits of Plaintiff's remand motion, the Court should deny that motion. Federal question jurisdiction is proper under the Supreme Court's four-part test set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013). Under that test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

All four factors are present here. *First*, Plaintiff's Complaint necessarily raises federal issues. Plaintiff makes its reliance on federal law clear by premising their claims

1

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

on alleged failures to report and halt "suspicious orders" for prescription opioids, two alleged duties arising solely from the CSA. Plaintiff fails to cite any state law in either the Complaint or its remand motion that sets forth comparable duties to report and stop shipment of suspicious orders. *Second*, the parties actually dispute the federal issues because they contest whether Distributors violated the CSA. *Third*, the federal issues are substantial given the federal interest in the CSA's nationwide regulatory scheme, which requires uniformity, and the federal government's asserted interest in the subject matter of this litigation. And *fourth*, federal jurisdiction will not upset any federal-state balance.

For these reasons, the Court should deny Plaintiff's motion to remand.

## II.    BACKGROUND[1]

### A.    Plaintiff's Action

Plaintiff filed this lawsuit in Nevada state court on September 18, 2018. ECF No. 1. The Complaint asserts six claims against McKesson and the other Distributor Defendants: public nuisance (First Cause of Action); common law public nuisance (Second Cause of Action); negligent misrepresentation (Third Cause of Action); negligence (Fourth Cause of Action); unjust enrichment (Fifth Cause of Action); and punitive damages (Sixth Cause of Action). *Id.*

Plaintiff's central theory of liability against Distributors is that Distributors allegedly violated two duties aimed at preventing "diversion" of controlled substances: (1) a duty to report "suspicious orders" for controlled  substances; and (2) a duty to halt shipments of suspicious orders. Indeed, Plaintiff's claims against Distributors rest on allegations that Distributors should have reported and refused to ship purportedly suspicious opioid orders from Nevada pharmacies. *See, e.g.*, Compl. ¶ 141 (Distributor Defendants "have a duty to create and use a system to identify and report downstream suspicious orders of controlled substances to law enforcement"); *id.* ¶ 145 (Distributor

---

[1] "JPML Dkt." refers to the JPML's docket in *In re National Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L.); "ECF No." refers to the Court's docket in *City of Reno v. Purdue Pharma L.P., et al.*, No. 3:18-CV-00454-MMD-WGC (D. Nev.) or in the referenced court.

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1  Defendants "must also stop shipment on any order which is flagged as suspicious"); *id.* ¶

2  188 (Distributor Defendants "intentionally and/or unlawfully failed to maintain effective

3  controls against diversion through proper monitoring, reporting and refusal to fill

4  suspicious orders of opioids").

5       The two alleged duties on which Plaintiff's claims rest—the duties to report and

6  refuse to ship suspicious opioid orders—are found only in the federal CSA and its

7  implementing regulations. The alleged reporting duty is set forth in the CSA's

8  implementing regulations. *See* 21 C.F.R. § 1301.74(b) (duty to monitor and report

9  suspicious orders of controlled substances). The alleged shipment-halting duty likewise

10  arises out of the Drug Enforcement Administration's ("DEA") interpretation of the CSA,

11  pursuant to which Distributors must "decline to ship" suspicious orders for controlled

12  substances. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing

13  *In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501, 2007 WL 1886484 (DEA

14  July 3, 2007), as the source of DEA's "Shipping Requirement").

15       Despite its protestations to the contrary, Plaintiff's reliance on federal law is

16  evident on the face of the Complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392

17  (1987) (federal jurisdiction exists when federal question is presented "on the face of the

18  plaintiffs' properly pleaded complaint"). The alleged duties to report and halt shipments

19  of suspicious orders for controlled substances, which arise solely from the CSA, are

20  prevalent throughout the Complaint and underpin all of Plaintiff's claims against

21  Distributors. *See, e.g.*, Compl. ¶¶ 141-42, 144-46, 149, 152-53, 188-89, 216-17.

22       Although Plaintiff vaguely references "state law" and "Nevada law," ECF No. 5 at

23  9:19-11:1, neither its remand motion nor the Complaint contains a single citation to any

24  provision that could plausibly give rise to a duty to report suspicious orders or halt

25  shipments for prescription opioids. No such citation exists. Nevada law does not impose

26  any obligations on wholesale pharmaceutical distributors comparable to those allegedly

27  found in the federal CSA and its implementing regulations. Accordingly, Plaintiff's

28

3

perfunctory invocation of state law does not support any cause of action that depends on Distributors' alleged over-distribution of opioids into Nevada.

### B.   The Multidistrict Litigation

Not only does Plaintiff base its claims on federal law, its claims are the same as those already being asserted in federal court by hundreds of other municipalities and other plaintiffs against opioid manufacturers, distributors, and pharmacies. To consolidate these cases for coordinated pre-trial proceedings, the JPML formed an MDL in the Northern District of Ohio. JPML Dkt. No. 328. In total, more than one thousand actions are now pending in the MDL. As new cases are filed across the country each week, the JPML continues—and will continue—to transfer more actions to the MDL.

After McKesson removed this action, the case was tagged for inclusion in the MDL, JPML Dkt. No. 2569, and on October 2, the JPML issued an order conditionally transferring the case to the MDL because it appears to "involve questions of fact that are common to the actions previously transferred to the [MDL]," JPML Dkt. No. 2636 (CTO-58) (attached as **Exhibit A**).

On October 3, Plaintiff filed a Motion for Order Shortening Time, requesting expedited consideration of its remand motion, ECF No. 8, which McKesson opposed, ECF No. 9.  Recognizing that expedited consideration was "unnecessary in light of Plaintiff's ability to oppose the Judicial Panel on Multistate Litigation's conditional transfer order," this Court denied the Motion for Order Shortening Time on October 5. ECF No. 10.

Contemporaneously with this opposition, McKesson has moved to stay this action in its entirety pending the JPML's final transfer decision.[2]

---

[2] "This Court's Civil Standing Order No. 1 indicates that Jurisdictional motions [will] be addressed before other motions . . . " in an effort to diminish the need for the parties to engage in unnecessary discovery. *See* ECF No. 5 at 6, n.2. However, as explained more fully in McKesson's stay motion, deferring consideration of remand until

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

III.    ARGUMENT

Given Plaintiff's reliance on duties arising under federal law, federal question jurisdiction is proper. Although Plaintiff purports to assert state law causes of actions, its claims are predicated on alleged violations of the CSA. Accordingly, those claims necessarily raise substantial federal issues that should be resolved in federal court. Because this case presents federal questions, Plaintiff's motion to remand should be denied.

A.    The Complaint Necessarily Raises Disputed and Substantial Issues of Federal Law.

Federal district courts have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–66 (1997).

Even where state law creates the causes of action asserted in a complaint, one or more of those causes of action may raise a federal question sufficient to warrant removal jurisdiction. Under the Supreme Court's *Grable* and *Gunn* decisions, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 315. "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be

the JPML can determine whether this action belongs in the MDL will better serve this aim. The MDL promotes judicial efficiency and avoids duplicative discovery by coordinating pretrial proceedings of hundreds of actions nearly identical to this one that are pending nationwide.

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

5

inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quotation marks omitted).

Courts have routinely found the four *Grable/Gunn* factors to be satisfied in cases where state law claims are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential. *See, e.g., PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315–18 (2d Cir. 2016) (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

This case, too, satisfies all four elements outlined in *Grable* and *Gunn*.

1.     The Complaint "necessarily raises" a federal issue.

An action "necessarily raises" a federal question when "the right to relief depends upon the construction or application of federal law." *PNC Bank*, 189 F. App'x at 104 n.3. Significantly, "an action under 28 U.S.C. § 1331(a) arises . . . *if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) (emphasis added); *see also Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808–09 (1986) (federal question jurisdiction

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

6

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    exists if "vindication of a right under state law *necessarily turn[s] on some construction of*

2    *federal law*" (emphasis added, internal citation omitted)).

3        In determining whether state law claims turn on construction or application of

4    federal law, the Court must "begin by considering the duty underlying each claim."

5    *NASDAQ*, 770 F.3d at 1020. "A state-law claim 'necessarily' raises federal questions

6    where the claim is affirmatively 'premised' on a violation of federal law," *Jacobson*, 824

7    F.3d at 315, or where the "singular duty" underlying the claim arises under federal law,

8    *NASDAQ*, 770 F.3d at 1021.

9        Here, Plaintiff's claims necessarily raise federal issues because they are expressly

10   premised on Distributors' alleged violations of alleged legal duties that arise out of the

11   CSA and its implementing regulations—*i.e.*, the duties to report and halt suspicious

12   orders for controlled substances. *See* 21 C.F.R. § 1301.74(b) (setting forth reporting

13   requirement); *Masters Pharm.*, 861 F.3d at 212-13 (discussing shipping requirement).

14       In the Complaint, Plaintiff cites to federal laws and regulations to establish the

15   alleged duties to report and halt suspicious orders, and repeatedly pleads that

16   Distributors' alleged violations of these duties give rise to Plaintiff's causes of action. *See*

17   Compl. 149 (alleging McKesson agreed to "maintain a compliance program designed to

18   detect and prevent the diversion of controlled substances" and "inform DEA of

19   suspicious orders required by 21 CFR § 1301.74(b)"). While in many instances Plaintiff

20   fails to cite the source of the alleged duty to stop shipment of suspicious orders, the

21   absence of any state requirement to report or halt suspicious orders makes Plaintiff's

22   dependence on the CSA clear. *See, e.g.*, Compl. ¶ 142 ("distributors must know their

23   customers, report suspicious orders, conduct due diligence, and terminate orders if there

24   are indications of diversion."); *id.* ¶ 144 ("Defendant Distributors each have a non-

25   delegable duty to identify and track suspicious orders of controlled substances"); *id.* ¶

26   145 ("Defendant Distributors must also stop shipment on any order which is flagged as

27   suspicious"); *id.* ¶ 216 ("Defendants intentionally and/or unlawfully distributed opioids

28

7

without reporting or refusing to fill suspicious orders or taking other measures to maintain effective controls against diversion. Defendants intentionally and/or unlawfully continued to ship and failed to halt suspicious orders of opioids").

As these citations demonstrate, Plaintiff's claims against Distributors turn on allegations that Distributors breached duties arising out of the CSA and its implementing regulations. Plaintiff cannot avoid federal jurisdiction by omitting explicit citations to the only possible source of the duties alleged, the CSA, and inserting perfunctory references to Nevada law or, even more vaguely, "the law." *See e.g.,* ECF No. 5 at 10:5-12 (claiming Distributors "ignored the law, paid the fines, and continued to unlawfully fill suspicious orders").

Although a plaintiff "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar,* 482 U.S. at 392 (emphasis added), Plaintiff's claims here have no such exclusive state law basis. Plaintiff cannot locate *any* state law authority that requires wholesale distributors to report or stop shipments of suspicious orders for controlled substances. None of the broad, conclusory statements Plaintiff asserts to demonstrate that the Complaint extends "[b]eyond allegations of failing to monitor and report the diversion of dangerous drugs," ECF No. 5 at 12:4-5, can fill this void, and many reference allegations that the Complaint directs solely at the manufacturer defendants, and not at Distributors. *See, e.g., id.* at 12:8-9 ("Defendants' marketing was a factor in physicians, patients, and others to [sic] prescribe or purchase opioids."); *id.* at 12:27-28 ("Defendants' actions were, at the least, a substantial factor in doctors and patients not accurately assessing and weighing the risks and benefits of opioids for chronic pain."). Thus, to prevail on its claims against Distributors as pled, Plaintiff necessarily would need to establish that they breached duties that arise exclusively under federal law, meaning this Court would need to interpret the CSA and its implementing regulations.

Plaintiff incorrectly asserts that the Complaint does not necessarily raise federal issues because the "City of Reno's allegation that Defendants breached standards of care

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

created by federal law is but one of many bases asserted by the City to establish its state law claims." ECF No. 5 at 15:14-16. As an example, Plaintiff cites to one allegation supporting its public nuisance claim, *id.* at 15:19-22 (citing Nev. Rev. Stat. § 202.450(2)(e), which states that a public nuisance is created when controlled substances are "unlawfully sold, served, kept, manufactured, used or given away."), and another allegation supporting its negligence claim, *id.* at 15:22-24 (Distributors "owe a non-delegable duty to exercise reasonable care in the distribution and/or sale of opioids."). These allegations simply reflect that Plaintiff has pled multiple, separate causes of action (based on the alleged breach of the same underlying federal duties); they do *not* demonstrate that Plaintiff has alleged separate "bases for the Defendants' violations of state law and liability to the City of Reno." *Id.* at 15:17-19. Moreover, even if Plaintiff could prove some of its claims against Distributors without establishing a violation of federal law, this Court still has federal-question jurisdiction because "[a] single claim over which federal-question jurisdiction exists is sufficient to allow removal" of the entire action. *Broder*, 418 F.3d at 194; *see City of Chicago*, 522 U.S. at 166 ("Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'").

 As noted in McKesson's Notice of Removal, Plaintiff's statutory public nuisance claim is a clear example of a cause of action that "necessarily raise[s] disputed issues of federal law" because it is predicated on the violation of a "singular duty . . . [that] derives directly from federal law." *NASDAQ*, 770 F.3d at 1021-22; *see also Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 723 (5th Cir. 2017). As Plaintiff states, Nevada law provides that a public nuisance is created when "a controlled substance, including but not limited to opioids, is '*unlawfully* sold, served, kept, manufactured, used or given away." ECF No. 5 at 15:19-22. Yet, Plaintiff fails to identify any Nevada law that gives rise to an independent obligation to report or halt suspicious

9

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

orders, meaning that the "unlawful" conduct underlying this claim *must* stem from violations of the federal CSA.

Moreover, the Complaint necessarily raises a federal issue because it implicates the actions of a federal agency, the DEA. *See* ECF No. 1 at ¶¶ 28-29, 35. Specifically, Plaintiff claims that the *total volume* of prescription opioids distributed by Distributor Defendants was unreasonable or suspicious. Compl. ¶ 151. Because the total volume of opioid distributions is based on annual production quotas for controlled substances set by the DEA, Plaintiff's "total volume" allegations necessarily call into question the DEA's decision-making as to those quotas. *See* 21 C.F.R. § 1303.11(a) (requiring the DEA to "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year"). This observation is not, as Plaintiff misapprehends, an argument for federal preemption. *See* ECF No. 5 at 21:1-3. Rather, Plaintiff's allegations challenging the validity of the DEA's determinations made pursuant to federal law simply further demonstrate that the Complaint necessarily raises federal issues. *See Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 862 (E.D. La. 2014) ("While Plaintiff may not be expressly challenging a specific action of a federal agency, the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme."); *McKay v. City & Cty. of San Francisco*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (concluding that complaint necessarily raises federal issue where "plaintiffs' claims are 'inescapably intertwined' with a collateral attack on an [agency] order").

Because, as noted above, at least some of Plaintiff's causes of action turn on a showing that Distributors violated the CSA and its implementing regulations, federal question jurisdiction exists.

     2.    The parties "actually dispute" the federal issue.

The federal issues raised by the Complaint are "actually disputed" because the parties contest whether the CSA and its implementing regulations in fact give rise to

duties to report and halt suspicious orders for prescription opioids, the precise scope and contours of any such duties that might exist under the CSA, and whether Distributors violated these alleged duties. Indeed, because Plaintiff's claims against Distributors depend on its theory that Distributors breached these alleged duties, this issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

Plaintiff acknowledges that McKesson disputes "the scope and alleged duties under the FCSA," *See* ECF No. 5 at 16:7-10, while contending, without explanation, that such dispute does not amount to a "dispute over the meaning of the federal statute or regulation." *Id.* at 16:5-6. To be clear: McKesson contests the meaning of the CSA and its implementing regulations on which Plaintiff's claims depend. For example, McKesson disputes not only that DEA's relatively recent *policy* requiring the halting of suspicious orders constitutes governing *law* but also whether McKesson has breached any duty arising from that policy. Thus, were this case to be remanded to a Nevada state court, that court would need to determine "the contours of [the] federal duty," "the scope of that duty," and "whether [Distributors' conduct] amounted to a breach of that duty." *NASDAQ,* 770 F.3d at 1023. That analysis would require the state court to determine whether the CSA and its implementing regulations in fact give rise to the duties to report and halt suspicious orders, what any such duties entail, what constitutes a "suspicious" delivery under federal regulations, what actions should have been taken to resolve those suspicions or "halt" the shipment, whether existing processes satisfy federal reporting guidelines, and other disputes arising under federal regulations.

Given these live disputes about the existence and scope of Distributors' duties under the CSA, Plaintiff cannot credibly maintain, as asserted in its remand motion, that no federal issue is actually disputed. *See* ECF No. 5 at 16:4-12. McKesson denies that the alleged duties under the CSA are as broad in scope as Plaintiff alleges they are, and denies that it violated any alleged duties under the CSA in the manner alleged in

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

11

1    Plaintiff's Complaint. Unless Plaintiff is willing to concede both points, then the federal

2    issue is actually disputed.

3         3.    The federal issues are "substantial."

4    The Supreme Court has explained that "[t]he substantiality inquiry under *Grable*

5    looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S.

6    at 260. A federal issue "can be important for many reasons," including because (i) "state

7    adjudication would undermine the development of a uniform body of federal law";

8    (ii) "resolution of the issue has broad significance for the federal government"; or (iii) "the

9    case presents a nearly pure issue of law that would have applications to other federal

10   cases." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d

11   714, 724 (5th Cir. 2017) (alterations and quotation marks omitted). Exercising federal-

12   question jurisdiction in such cases "captures the commonsense notion that a federal court

13   ought to be able to hear claims recognized under state law that nonetheless turn on

14   substantial questions of federal law, and thus justify resort to the experience, solicitude,

15   and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at

16   312.

17   The federal issues presented here are important to the federal system as a whole

18   because there is a strong federal interest in ensuring a uniform interpretation of the CSA.

19   The scope of the obligations the CSA places on distributors of pharmaceuticals—e.g.,

20   whether and to what extent it requires distributors to halt "suspicious" orders—is a

21   nearly pure legal question that has broad significance to the federal government,

22   including by affecting the DEA's ability to enforce the CSA, and methods for enforcing it.

23   Moreover, the resolution of this legal issue will have application not only in this case, or

24   even in the hundreds of opioid-related actions pending in the MDL, but will apply

25   broadly to all cases in which a plaintiff alleges that any distributor of pharmaceuticals

26   breached its alleged duties to report or halt shipments of suspicious orders.

27

28

12

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

a.    There is a federal interest in ensuring uniform interpretation of the CSA.

Courts have often found federal issues to be sufficiently substantial where they raise "questions [that] involve aspects of . . . complex federal regulatory scheme[s] . . . as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" *Broder*, 418 F.3d at 195. Such rulings are especially common where, as here, federal agencies are responsible for implementing a national regulatory system for which uniformity is essential. In *NASDAQ*, for example, the Second Circuit ruled that "the disputed federal issue in th[e] case—whether [the defendant] violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO—is sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to the federal system as a whole." 770 F.3d at 1024 (quotation marks omitted). Likewise, in *Jacobson*, the Second Circuit held that "minimizing uncertainty over the tax treatment of mortgage-backed securities, as Congress intended, fully justif[ied] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 824 F.3d at 318 (quotation marks omitted).

Similarly, Plaintiff's claims would require this Court to determine the existence and scope of Distributors' obligations under the CSA and whether Distributors breached those duties, implicating the uniformity concerns addressed above. In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a *unified* approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4572 (emphasis added). Plaintiff's claims thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ*, 770 F.3d at 1024 (quotation marks omitted). Furthermore, "minimizing uncertainty over" reporting and

13

shipping obligations under the CSA "justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Jacobson*, 824 F.3d at 318 (quotation marks and alteration omitted).

Resort to a federal forum is particularly warranted here because Plaintiff's action is but one of more than 1,150 cases pending in the MDL. If this case proceeds in federal court and is transferred to the MDL, the MDL court will ensure uniform construction and application of the CSA and any alleged duties arising under the CSA, thus achieving Congress's goal of a "unified approach" to regulating controlled substances. If, on the other hand, this case were remanded to the state court, nothing would prevent that court from construing and applying federal CSA obligations in a manner inconsistent with the MDL and with federal policy generally.

b.   **The federal issues presented in this case have broad significance for the federal government.**

The federal government itself has contradicted Plaintiff's assertion that this action "will not directly affect actions taken by federal actors," ECF No. 5 at 16:23-24, by making clear the opioid litigation will impact its ability to enforce the CSA. The Department of Justice filed a Statement of Interest on behalf of the United States in the MDL proceedings, asserting the federal government's interests in, among other things, its "law enforcement and legal activities in conjunction . . . with the multidistrict litigation," specifically including "[c]riminal and civil tools available *under the Controlled Substances Act*." *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161, at 7 (attached as Exhibit B) (emphasis added).

Allowing a state court to resolve state law claims premised on violations of the CSA—and to determine the existence and scope of any duties under the CSA—creates the potential for inconsistent interpretations of the CSA across jurisdictions. *See* 21 U.S.C. § 903 (although Congress did not intend to "occupy the field" of controlled substances regulation with CSA, CSA pre-empts inconsistent state law). Allowing state courts to issue conflicting interpretations of the CSA would inevitably undermine the federal

14

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

government's efforts to enforce the statute and sow confusion among federally regulated entities.

    c. **This case presents a nearly pure issue of law that would have applications to other federal cases.**

  As noted, this case would require a court to determine the existence of duties arising under the CSA, the scope and contour of any such duties that exist, and "whether [Distributors' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023. These questions present "nearly pure issue[s] of law" that would necessarily "have applications to other federal cases." *Tenn. Gas Pipeline*, 850 F.3d at 724.

    d. **Substantiality does not require a federal cause of action.**

  Plaintiff incorrectly suggests that the absence of a federal cause of action renders federal jurisdiction lacking. *See* ECF No. 5 at 14:16-15:7. That argument is inconsistent with *Grable*. In *Grable*, the Supreme Court specifically held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction, and found that the federal issue presented in that case was sufficiently substantial notwithstanding the lack of a federal cause of action. 545 U.S. 308, 317 ("*Merrell Dow* cannot be read whole as overturning decades of precedent . . . and converting a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one"); *see also Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997) (finding state's argument under *Merrell Dow* that federal question jurisdiction could only extend over contract claims for which there was an express federal cause of action under the Indian Gaming Regulatory Act "construes . . . federal question jurisdiction . . . too narrowly and underestimates the federal interest at stake.").

  Thus, the fact that the CSA does not afford Plaintiff a private right of action does not diminish the substantiality of the federal questions here, particularly when federal courts have exclusive jurisdiction to enforce the CSA.

15

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

4.    Federal jurisdiction will not disrupt the Congressionally-approved balance of federal-state judicial responsibilities.

Finally, the federal issues presented by Plaintiff's Complaint are capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. To support its assertion to the contrary, Plaintiff resorts to mischaracterizing its Complaint as one that makes mere "references to federal statutes and regulations" and suggests that removal would "lead to an epic shift of cases from state courts to federal courts." ECF No. 5 at 18:27-28, 19:22-25. Plaintiff's claims do not just "reference" or "cite" the federal CSA; Plaintiff's claims *depend* on the CSA to establish the alleged duties supporting all of its claims against Distributors. Moreover, federal courts are already the exclusive fora for determining the permissible scope of restraints on Distributors under the CSA, particularly when injunctive relief is sought. *See* 21 U.S.C. § 882(a) ("The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings . . . to enjoin violations of this subchapter."). Plaintiff here expressly requests "declaratory and/or injunctive relief." Compl., Prayer for Relief.

In addition, as explained above, allowing cases like this one to proceed in federal court promotes uniform development of federal law. By contrast, litigating this case in state court would run the risk of the state court applying federal requirements inconsistently with the manner in which DEA—the federal agency responsible for enforcing the CSA—applies them.

B.    The Remand Decisions Cited by Plaintiff Are Distinguishable.

Recognizing that Nevada statutes and regulations cannot support its claims, Plaintiff turns to remand decisions from opioid-related cases from other jurisdictions, governed by other states' statutes and regulations. ECF No. 5 at 4:13-21 (citing *Delaware, ex rel. Denn v. Purdue Pharma L.P.*, No. 1:18-cv-00383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018); *West Virginia, ex rel. Morrisey v. McKesson Corp.*, No. 16-cv-01772, 2017 WL 357307 (S.D. W. Va. Jan. 24, 2017); *West Virginia, ex rel. Morrisey v. McKesson Corp.*,

16

No. 2:17-cv-03555-DAF (S.D. W. Va. Feb. 15, 2018); *County of Anderson v. Rite Aid*, No. 8:18-cv-1947 (D.S.C. Aug. 21, 2018); *Weber County, Utah v. Purdue Pharma*, No. 1:18-cv-00089 (D. Utah Aug. 7, 2018).[3]

These unpublished, nonbinding, and, most importantly, inapposite district court decisions do not alter the analysis here. As an initial matter, many of these cases involved actions brought by state attorneys general. Principles of comity thus militated in favor the State's choice of forum. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a *State* has brought from the courts of that State . . . ." (emphasis added)).

Additionally, all of the cases cited by Plaintiff involved allegations of state-law statutory violations not present here. In each of those cases, the plaintiff alleged that the defendant had violated duties arising not only out of the federal CSA, but also out of the uniform controlled substances act specific to the state in which its suit was filed. None of the plaintiffs in the cited cases relied on Nevada laws and regulations, which are unique in that they lack *any* provision that could plausibly be read to impose reporting or shipping requirements on wholesale pharmaceutical distributors.

Finally, the decisions cited by Plaintiff fundamentally understate the critical importance of the CSA to the federal government. For example, the *Delaware* decision posited that "the federal issues in this case . . . are not sufficiently substantial to the federal government as a whole," 2018 WL 1942363 at *4, despite the fact that the federal Government has specifically expressed that it has such an interest in an MDL covering more than a thousand similar cases, all of which bear directly on the Government's

---

[3] While Plaintiff also relies on *New Hampshire v. Purdue Pharma, et al.*, No. 17-cv-427-PB, 2018 WL 333824 (D.N.H. Jan. 9, 2018), that case does not address federal question jurisdiction or even name wholesale pharmaceutical distributors; instead it examines subject matter jurisdiction pursuant to the Class Action Fairness Act. ECF No. 5 at 4:20.

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1   ability to enforce its nationwide regulatory scheme for controlled substances. *See*

2   Statement of Interest at 7.

3        C.   **The Court Should Defer, Rather Than Expedite, Consideration of Plaintiff's**

4             **Remand Motion.**

5        The Court may and should defer ruling on Plaintiff's remand motion altogether.

6   As McKesson further explains in its motion to stay these proceedings (filed

7   contemporaneously herewith), although federal jurisdiction is proper here, delaying

8   consideration of Plaintiff's remand motion until the JPML makes a final transfer decision

9   will promote judicial efficiency and ensure consistent remand rulings by allowing the

10  MDL court to consider this and all other remand motions presenting similar issues.

11       In the interest of promoting judicial economy, "[c]ourts frequently grant stays

12  pending a decision by the MDL Panel regarding whether to transfer a case." *Hernandez*

13  *v. ASNI, Inc.*, 2015 WL 3932415, at *1 (D. Nev. June 24, 2015). If the JPML transfers this

14  case to the MDL, the MDL judge can rule on Plaintiff's remand motion in conjunction

15  with all other remand motions presenting similar federal question issues, in addition to

16  all other pretrial matters, thereby preserving judicial resources, ensuring consistent

17  decisions, and avoiding the risk of inconsistent litigation. For these reasons, courts in this

18  district routinely stay proceedings—and defer consideration of remand motions—in

19  cases that will potentially transfer to an MDL. *See, e.g., Pate v. DePuy Orthopaedics, Inc.*,

20  2012 WL 3532780, at *2 (D. Nev. Aug. 14, 2012) ("Allowing the transferee judge to rule on

21  the motion to remand provides for consistent treatment of similar issues and may reduce

22  the burden on litigants and the judiciary.").

23       Here, deferring consideration of Plaintiff's remand motion is especially

24  appropriate because the jurisdictional issue presented in this case—i.e., whether state law

25  causes of action predicated on alleged breaches of duties arising solely under the CSA—

26  has also arisen in other actions currently pending in the MDL. *See, e.g., City of Paterson*

27  *v. Purdue Pharma L.P.*, No. 2:17-cv-13433 (D.N.J.) (removed on federal-question

28

18

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

grounds); *N. Miss. Med. Ctr., Inc. v. McKesson Corp.*, No. 1:18-cv-00078 (N.D. Miss.) (same); *Cty. of Hudson v. Purdue Pharma L.P*, No. 2:18-cv-09029 (D.N.J.) (same).

As McKesson explains in its Motion to Stay, many district courts in other jurisdictions have stayed proceedings or otherwise deferred consideration of pending remand motions presenting precisely the same jurisdictional issue as Plaintiffs' remand motion, so that the JPML may first decide whether to transfer the action to the MDL. *See, e.g., Tucson Medical Center v. Purdue Pharma L.P.*, No. 4:18-cv-00481, (D. Ariz. Oct. 5, 2018), ECF No. 50 (staying proceedings in part and deferring consideration of remand motion pending MDL transfer decision in opioid-related action removed on federal question and federal officer grounds); *County of San Mateo v. McKesson Corp.*, No. 3:18-cv-04535 (N.D. Cal. Aug. 28, 2018), ECF No. 22 (staying proceedings in opioid-related action removed on federal question grounds pending MDL transfer decision); *City of Jacksonville v. Purdue Pharma L.P.*, No. 3:18-cv-00751 (M.D. Fla. Aug. 22, 2018), ECF No. 43 (deferring consideration of remand motion in opioid-related action removed on federal question grounds pending MDL transfer decision); *Village of Melrose Park v. McKesson Corp.*, No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018), ECF No. 26 (staying proceedings in opioid-related action removed on federal question grounds pending MDL transfer decision).

Therefore, in the interests of promoting judicial economy and consistency of rulings, this Court should defer consideration of Plaintiff's motion and instead allow the MDL Court to address it along with the others.

19

IV.    CONCLUSION

For the reasons set forth above, McKesson respectfully requests that the Court deny Plaintiff's motion to remand and its request for expedited consideration.

On this 9th day of October, 2018.                    MORRIS LAW GROUP

                                                      /s/ ROSA SOLIS-RAINEY
                                                      Steve Morris, Bar No. 1543
                                                      Rosa Solis-Rainey, Bar No. 7921
                                                      411 E. Bonneville Ave., Ste. 360
                                                      Las Vegas, Nevada 89101

                                                      *Attorneys for Defendant, McKesson
                                                      Corporation*

20

CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS LAW GROUP, and that the following document was served via electronic service: MCKESSON CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

TO:

Bill Bradley
BRADLEY, DRENDEL & JEANNEY
6900 s. McCarran Blvd., Ste. 2000
Reno, Nevada 89509
office@bdjlaw.com

Robert T. Eglet
Robert Adams
Richard K. Hy
EGLET PRINCE
400 S. 7th Street, 4th Floor
Las Vegas, Nevada 89101
eservice@egletlaw.com

DATED this 9th day of October, 2018.

By: /s/ PATRICIA QUINN
An Employee of Morris Law Group